NETTIE B. LENZ AND OTHERS v. WANDA HOIUM AND ANOTHER.
WANDA C. HOIUM v. HENRY A. KRAUSE AND ANOTHER.
RAYMOND C. HOIUM v. SAME.
JOYCE HOIUM v. SAME.

116 N. W. (2d) 64.

June 15, 1962—Nos. 38,516, 38,517, 38,518, 38,519.

*Schermer & Gensler* and *Edward H. Borkon,* for appellant.
*W. O. Bissonett,* for respondents Wanda and Raymond Hoium.
*Lewis, Hammer, Heaney, Weyl & Halverson,* for respondent Joyce Hoium.
*Eugene A. Rerat, Frank L. Brady, Louis N. Crill, Robb, Robb & Van Eps,* and *Harry H. Peterson,* for respondents Lenz.

THOMAS GALLAGHER, JUSTICE.

Actions for damages resulting from a three-car collision which occurred April 29, 1960, at about 8 p. m. on U. S. Highway No. 61, approximately 1½ miles north of Pine City. At the point where the accident occurred Highway No. 61 extends in a north and south direction. It has two 12-foot lanes and is blacktopped with graveled shoulders some 8 feet in width on either side.

The accident occurred when a car owned by Raymond Hoium and being driven south by his wife, Wanda Hoium, collided with a truck owned and being driven south by Henry A. Krause, preceding the Hoium car, and a car owned and being driven north by Fred R. Lenz, since deceased. The Hoium car had turned into the east lane of the highway in attempting to pass around the Krause truck which had lessened its speed preparatory to making a right turn off the highway into a private driveway. In thus turning out the Hoium car had scraped the left rear corner of the truck and then had collided with the oncoming Lenz car.

The cases arising out of this collision were consolidated for trial and tried by the court without a jury. It determined that both the driver of the Hoium car and the driver of the Krause truck were negligent; that their negligence was the proximate cause of the accident; and that the driver of the Lenz car was free from negligence. Based thereon it awarded damages as follows:

To Raymond Hoium (not a passenger) $650 property damage against Henry Krause.

To Joyce Hoium (a passenger in the Hoium car) $11,500 against Henry Krause, subject to contribution from Wanda Hoium.

To Carol Lenz (a passenger in the Lenz car) $2,142 against Henry Krause and Wanda Hoium.

To Nettie Lenz $30,376.46 against Henry Krause and Wanda Hoium.

To Nettie Lenz, as administratrix of the estate of Fred R. Lenz, $2,450 property damage and $177.55 medical expenses against Henry Krause and Wanda Hoium.

On these appeals by Henry Krause it is contended that:

(1) The trial court erred in sustaining objection to a question directed by his counsel to Mrs. Wanda Hoium on cross-examination as follows:

"Q. Are you sure you were driving the car?"

(2) The evidence was insufficient to sustain a finding of negligence on the part of defendant Henry Krause.

Reference to the pleadings in these actions clearly indicates that all parties thereto, including appellant, alleged or admitted that the Hoium car was being driven by Wanda Hoium at the time of the accident. Raymond C. Hoium, the car owner, so alleged in the complaint in his action against Henry Krause. Nettie B. Lenz, Carol Lenz, and Nettie B. Lenz as trustee so alleged in the complaint in their action against Wanda Hoium and Henry Krause. Krause, in his separate answer and cross-claim to the Lenz complaint, admitted that the Hoium car was being operated by Wanda Hoium and sought contribution from her in the event he was found liable. In his third-party complaint in the action instituted by Joyce Hoium against him

and Mrs. Lenz as administratrix, he alleged that Wanda Hoium was the operator of the Hoium car at the time of the accident. In his amended answer to the Joyce Hoium action he implied that Wanda Hoium was the driver.

The question to which the court sustained objection was one of a series asked Wanda Hoium by counsel for Henry Krause in seeking to obtain answers which the witness was unable to give. The following from the record is illustrative of this:

"Q. How long a distance did you drive with the lights bothering you, did you drive as far as four or five hundred feet?

"A. I can't tell you that, I don't know.

"Q. Could it be somewhere between four hundred feet and five hundred feet?

"A. I don't know.

"Q. Could it have been a mile?

"A. That is quite a ways away, a mile.

"Q. Could it have been a half a mile?

"A. I can't answer that, I don't know how far the car was.

"Q. Then, you have no idea of any of the distances involved here, is that correct?

"A. That is right, not at night I haven't.

"Q. And from the time the lights of the oncoming car started to blind you, you cannot tell me whether you drove ten feet or six hundred feet, is that your testimony?

"A. As I kept getting closer, the lights were bothering me, but how far the car was away from me I don't know.

"Q. That is not the question. The question is, how many feet did you continue to drive with the lights bothering you?

"A. I don't know how many feet it was.

"Q. Could it have been as little as ten feet?

"A. I don't know.

"Q. Could it have been as much as a half a mile?

"A. I can't answer that.

"Q. *Are you sure you were driving the car?*" (Italics supplied.)

After objection to this question was sustained, no offer of proof was

made as to evidence which would be disclosed by the question nor to the effect that counsel for Krause sought to establish that someone other than Wanda Hoium was driving the Hoium car. Subsequently, when Joyce Hoium, the only other person in the Hoium car, was testifying, no attempt was made to indicate that she had been driving it at the time of the accident. The only theory of all parties, including Krause, throughout the trial was that the Hoium car had been driven by Wanda Hoium.

There was substantial evidence to sustain the court's finding that Krause's negligence was a proximate cause of the collision. This included testimony that the "brake light" of his truck had burned out; that its "taillights" were not operating; that the truck did not have a rear signal light; that in attempting to make a right turn from the highway into a private driveway Krause had given no signal of his intent until only 25 or 30 feet from the driveway; that at that time he merely opened and closed his left door to indicate that he intended to turn to the *right* off the highway; and that because of the truck's defective lights and the conduct described Wanda Hoium had not seen his truck in time to avoid striking it as she turned out to her left and in consequence struck it and then came in contact with the oncoming Lenz car.

In a deposition made May 3, 1960, prior to trial of the actions, Henry Krause stated:

"On Friday night, April 29, 1960 * * * I drove my * * * yellow Chevrolet pickup. It was drizzly and misting outside that night. * * *

"* * * I pulled onto the highway and I noticed a car coming behind me. * * * It was about 8:30 o'clock p. m., something like that, I don't know exactly. It was dark and auto lights were on.

"* * * I was going to turn in at the Bjorklund farm. * * *

"I slowed for my right turn and felt the car behind me strike my pickup truck. The car coming from behind just clipped me on the left rear corner of my pickup. * * * My pickup has one taillight on the left side. I do not have signal lights on the pickup. I opened my door as a signal and when I started turning then, I closed it. That was the only signal I gave.

*   *   *   *   *

"I believe that the accident that occurred that night was at least partly my own fault because I didn't have signal lights and it was dark, too dark for anyone coming to have been able to have had any warning that I was going to turn.

\* \* \* \* \*

"I often call the brake light the stop light. I can't say whether the light was working on the night of the accident or if it had already burned out and was not working. I know the brake light is not working now and I am going to get it fixed."

Wanda Hoium testified that the Krause truck had neither a tail-light nor signal lights on as it preceded the Hoium car on the highway just before the accident.

■ We find no error in the court's refusal to permit counsel to ask the question, "Are you sure you were driving the car?" It is clear that the question was in furtherance of counsel's attempt to induce the witness to testify as to matters concerning which, as she repeatedly stated, she had no knowledge or recollection. The pleadings, including those of Krause, raised no issue as to the fact that Wanda Hoium had been the driver of the Hoium car. Throughout the trial Krause and all other parties proceeded upon this theory of the cases, and we are at a loss to ascertain what counsel thought would be gained by this type of cross-examination.

■ On the question of the negligence of Krause, we find the evidence adequate to support the findings thereon. His failure to have proper lights; his failure to properly signal his intent to turn to the right off the highway; as well as his action in opening and closing his left door indicative of his intent to make a *left* rather than a right turn, would appear conclusive on this issue. Minn. St. 169.19 specifically requires that:

"Subd. 5. A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

\* \* \* \* \*

"Subd. 7. The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device of a type

approved by the commissioner, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible in normal sunlight, and at night both to the front and rear of such vehicle, then the signals must be given by such a lamp or device."

The evidence submitted is clearly indicative of Krause's violation of this statute.

The orders and judgments appealed from are affirmed.

Affirmed.